ORDER OF REMAND
GARY P. SULLIVAN, Chief Justice.
A PETITION FOR REVIEW (mislabeled as “Notice of Appeal”) having been filed June 22, 2000 by Robert E. Welch, on behalf of Ann Alvstad, from an Order of Dismissal, issued from the bench by the Honorable Marvin Youpee, on June 9, 2000, and good cause appearing therefor, this Court finds as follows:
1. On January 20, 2000, a Petition pursuant to Title IX CCOJ 2000 § 301[1] was filed by the Fort Peck Tribes’ Guardian ad Litem, LaFon Copenhaver, on behalf of T.J.B. (d.o.b. 1/14/00), a minor Indian child. (Woo-1-012) The Petition sought to have the child made a ward of the Court based on a referral alleging the possibility of exposure of the child to unreasonable risk.
2. An emergency hearing was held on January 20, 2000, pursuant to Title IX CCOJ 2000 § 202.[2] On the same day, the Court issued its order declaring the child a *225 ward of the Court pursuant to Title IX CCOJ 2000 § 102(b) or (d).[3] The Court placed the child in the care and supervision of the Montana State Department of Public Health and Human Services, Child and Family Services (DPHHS), for a period of ninety (90) days. Although it is not certain from documents in the Woo-1-012 file, it is believed that the child was physically placed in the care of Ann Alvstad, the putative paternal grandparent.
3. On March 31, 2000, Ann Alvstad filed a petition in the Fort Peck Tribal Court seeking custody of T.J.B. pursuant to Title X CCOJ 2000 § SO^a [4] (Woo-4-036).
4. Pursuant to the Court’s order of January 20, 2000, and Title IX CCOJ 2000 § 509, the Court commenced a review hearing on April 18, 2000. The hearing was continued to April 20, 2000, at which *226 time it concluded, resulting in an order returning the child to his biological mother, with reasonable visitation to the ‘father.’ [5] The DPHHS care and supervision of T.J.B. was vacated, however, the Court continued its wardship of the child. In its written order issued April 21, 2000, the Court ordered a further review/status hearing on July 11, 2000 at 2:00 p.m.
5. On May 2, 2000, a Motion to Dismiss Ann’s Petition for Custody (WooM-036) was filed by the biological mother based upon the fact the reasons for Ann’s petition no longer exist and that the child was no longer in Ann’s physical custody. Essentially, the mother’s petition alleged that Ann’s petition had been rendered moot by the Court’s order of April 21, 2000.
6. On May 17, 2000, Ann’s rebuttal to the Motion to Dismiss is filed, citing various reasons that the Court should deny the motion and conclude the proceedings at the further review hearing date of July 11, 2000, which had been previously scheduled.
7 On May 25, 2000, the biological mother filed a reply brief. A hearing was then calendared for June 9, 2000.
8. The Woo-4-036 file contains a ‘Courtroom Log’ with handwritten notes indicating that a hearing was held on June 9, 2000. The words ‘Petition Dismissed for Custody’ are written, ostensibly by the Court Clerk on this log.
9. No written order of the June 9, 2000, hearing appears in the file.
10. This Court cannot properly evaluate the merits of Ann’s petition for review without a final, written order of the Tribal Court regarding Woo-4-036.
NOW THEREFORE, IT IS THE ORDER OF THIS COURT:
The matter is remanded to the Tribal Court for its order following the hearing of June 9, 2000 with a copy of said order to be filed with this Court within thirty days.

. Title IX (Youth Code) Sec. 301. Petitions.
Any person may, and under the circumstances set forth in Section 202, the Juvenile Services Department shall, submit to the Court a petition to have any youth subject to the jurisdiction of the Court declared a delinquent youth or a youth in need of supervision. Such petition shall include (a) the name, address and telephone number of the petitioner, the youth and, if known, the youth’s parenl(s), legal guardian or custodian; (b) the reason(s) why the petitioner believes the youth is a delinquent youth or a youth in need of supervision; (c) supporting credible evidence, including but not limited to, affidavits, reports or written statements from social workers, law enforcement officers, juvenile officers, other child care professionals, relatives of the youth or members of the community.

. Sec. 202. Application to Court.
(a) Any law enforcement officer, and/or juvenile officer who takes a youth into secured custody/detention without a Court hearing shall (1) immediately notify the Juvenile Services Department and make a good faith ef *225 fort to notify the parent(s), legal guardian or custodian of the youth and (2) submit to the Juvenile Services Department a report of the event by the next following work day.
(b) Any law enforcement officer and/or juvenile officer who places a youth in need of supervision into custody with parent(s), legal guardian, custodian, extended family member or a social service agency shall (1) immediately notify the Juvenile Services Department and (2) submit to the Juvenile Services Department a report of the event by the next following work day.
(c) Within twenty-four (24) hours of the time the youth is placed in secured custody/detention, the Juvenile Services Department shall submit to the Court a petition under Section 301 of this Title. If the youth is taken into secured custody/detention on a weekend or holiday, Juvenile Services Department shall have twenty-four (24) hours from the start of the next work day to file a petition in Court.
(d) Where the youth is not placed in secured custody/detention, the Juvenile Services Department shall submit to the Court a petition within forty-eight (48) hours from the date of the officer's report. If the forty-eight (48) hour time limit to file a petition falls on a weekend and/or holiday, the forty-eight (48) hour time limit continues on to the next workday.

. Sec. 102. Definitions
... (b) Abused youth. A youth who has suffered or is likely in the immediate future to suffer serious physical or emotional harm as a result of a parent, guardian or custodian inflicting or failing to make reasonable efforts to prevent the infliction of physical or mental injury upon the youth, including but not limited to excessive corporal punishment or an act of sexual abuse or molestation.
. . . (d) Neglected youth. A youth:
(1) whose parent, guardian or custodian fails to provide the minimal care which a reasonable prudent parent would provide in the same or similar circumstances for the subsistence, education, and w'elfare of the youth; or
(2) who has special physical or mental conditions for which the youth's parent, guardian or custodian neglects or refuses to provide a reasonable level of special care; or
(3) whose parent, guardian or custodian is unable to discharge his/her responsibilities to and for the youth because of incarceration, hospitalization, or other physical or mental incapacity.
A youth shall not be deemed neglected if the only reason for failing to provide the minimal care for the youth is the indigence of the parent, guardian or custodian.

. Sec. 304a. Child custody actions outside divorce and annulment proceedings.
The Court shall have authority to determine custody of children as between parents and legal guardians, or as between parents or legal guardians and anyone w'ith actual physical custody of the child, either pursuant to a court order or otherwise, where there is no divorce or annulment proceeding pending. Such a custody proceeding shall commence with the filing of a written petition by the parent or legal guardian. In ruling on a custody petition, the Court shall employ the standards set forth in Section 304, and may order periodic support payments as set forth in that section. After the Court rules on the petition, neither party may file another custody petition for six (6) months absent a substantial change in circumstances. Any such change shall be described in the petition. Where abuse, neglect, or abandonment of the child is suspected, a petition may be filed under Section 301 of Title IX at any time.

. We found no documents in either file de-daring the paternity of T.J.B.